United States District Court
Southern District of Ohio
Western Division

| | | |
|---|---|---|
| STEPHEN ERKINS, | : | Case No. 1:09CV059 |
| | : | |
| Plaintiff, | : | D.J. Dlott |
| | : | M.J. Wehrman |
| v. | : | |
| | : | |
| JOHN E. POTTER, POSTMASTER | : | |
| GENERAL, U.S. POSTAL SERVICE, | : | |
| | : | |
| Defendant. | : | |

**Report and Recommendation[1] that: (1) Plaintiff's Motion
for Nunc Pro Tunc be DENIED; that (2)
Defendant's motion for summary judgment be GRANTED; and that
(3) this case be dismissed with prejudice**

Plaintiff Stephen Erkins ("Plaintiff") initiated this action by filing a *pro se* complaint on February 3, 2009 (Doc. 3) against his former employer, John E. Potter, Postmaster General, U.S. Postal Service, alleging that he was wrongfully terminated from his employment   Defendant has filed a  motion for summary judgment (Doc. 39) and proposed undisputed facts (Doc. 40).   Defendant's motion, Plaintiff's response in opposition (Doc. 44) and Defendant's reply (Doc. 46) have been referred to the undersigned for initial consideration and a report and recommendation.  I now recommend that Defendant's summary judgment motion be granted.

**I.  Summary Judgment Standard**

Summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

P. 56(c)(2).  Most of the facts in this case are undisputed.  To the extent that factual issues remain, the court has drawn all reasonable inferences and construed the facts in favor of the plaintiff, as the party opposing summary judgment in this case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986).

In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,Direct*  477 U.S. 242, 257, 106 S.Ct. 2505 (1986). The nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. 2505. A genuine issue exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

## II.  Factual and Procedural Background

Plaintiff is a veteran of the United States Navy who was honorably discharged on July 10, 1981. (Doc. 3 ¶ 4).  In March of 1997, Plaintiff began his employment with the United States Postal Service. *Id.*  In 1998, Plaintiff became injured.  In 2001, Plaintiff states that he was assigned to a limited duty position in order to accommodate his medical condition.  (Doc. 44 at 9).  Plaintiff was eventually terminated by his employer on grounds that he improperly claimed sick leave in order to attend court proceedings. At the time of his discharge, Plaintiff was working at the Cincinnati Bulk Mail Center (BMC) located in Sharonville, Ohio.

2

The genesis of the Complaint arises out of Plaintiff's request for sick leave on eight different occasions between September 13, 2006 and January 8, 2007. Plaintiff appeared in front of the Hamilton County Municipal Court on each of those occasions.[2] (Doc. 3 ¶ 12; Doc. 39, Exh. 1 at Ex. A; Exh. 1 at 20-21, 36, 40). Plaintiff does not deny that he "attended court proceedings and used sick leave" but argues that he was entitled to claim sick leave "because he was simultaneously stressed from the court proceedings." (Doc. 3 at ¶ 22, Doc. 44 at 3). On workdays on which Plaintiff appeared in court he filled out "Form 3971's" for sick leave, listing "IOD," a code that references an injury sustained on-the-job. (Doc. 3 at ¶ 22; Doc. 39, Exh. 1 (Erkins deposition) at 15-29).

Plaintiff generally alleges that unspecified other employees participated in outside activities while simultaneously claiming sick leave time. (Doc. 3 ¶ 18). However, the Complaint provides no information regarding those unspecified employees, such as their identity, characteristics such as their race or position, or when they allegedly claimed leave while participating in non-work related activities. *Id.*

In February 2007, the Postal Inspection Service Office of the Inspector General (OIG) conducted an investigation into Plaintiff's use of sick leave to attend court appearances. Richard Bowers was the "special agent" with the OIG assigned to conduct the investigation. (Doc. 44 at 6). One of the few disputed facts in this case concerns the basis for and circumstances surrounding the OIG's investigation. Plaintiff alleges he "was targeted" for investigation by plant management. (Doc. 3 ¶ 34). At the

---

[2]In 2006, Plaintiff was charged with several misdemeanor offenses (unrelated to his employment) by law enforcement officers in Hamilton County.

3

administrative level, Plaintiff alleged that "the agency retaliated against him by placing his sick leave information in a place it would be discovered by OIG." (Doc. 3-1 at 2). By contrast, Defendant asserts that the OIG investigating officer alone selected which employees to investigate without input from management. (Doc. 39 at 13). There is no dispute that the OIG report ultimately was distributed to various Postal Service Employees including the manager of the BMC

On March 29, 2007 just after issuance of the March 23, 2007 OIG report, Plaintiff was served with a Proposed Notice of Removal by his supervisor, Joyce Staples. The Proposed Notice mirrored the findings made in the OIG report including its conclusion of "improper conduct." (Doc. 3 ¶ 11, 14-15). Plaintiff, his union representative, and the manager of Distribution Operations at the BMC, Jerry Seale, met regarding the Proposed Notice of Removal. (Doc. 44 at 10). On April 23, 2007, Seale, who was the "deciding official" issued a final Notice of Removal terminating Plaintiff for "improper conduct." *Id.* Effective May 4, 2007, the Postal Service affirmed the proposed removal. ( Doc. 39, Exh. 1 at Ex. C).

Plaintiff filed an administrative appeal of his termination with the Merit System Protection Board (MSPB). (Doc. 3 ¶ 8, Doc. 3-1; Doc. 44 at 10). After a hearing before an administrative judge on July 17, 2007, the MSPB upheld the plaintiff's termination. (Doc. 3-1, Doc. 44 at 7-8). Plaintiff next appealed the administrative board's decision to the full MSPB.

The full board sustained the finding of improper conduct but remanded the case

for consideration of Plaintiff's affirmative defenses of racial discrimination and retaliation, which the board found had not been fully considered in the first hearing. (Doc. 3-1). On remand and after a second hearing, on or about October 3, 2008, the same administrative judge affirmed Plaintiff's termination, finding no nexus between Plaintiff's alleged protective activity and/or his race or sex and his termination. (Doc. 3, ¶8; Doc. 3-1). The MSPB denied Plaintiff's request for review by the full board.

Plaintiff next filed a timely petition with the EEOC asking that agency to review the Final Order terminating his employment.. In a decision dated January 15, 2009, the EEOC rejected his appeal. (Doc. 3, ¶9; Doc. 3-1). Plaintiff filed the instant federal complaint eleven days later alleging that his termination was motivated by racial discrimination and/or retaliation for his prior protected EEO activities.

Defendant persuasively argues that it is entitled to summary judgment for two reasons: 1) Plaintiff's failure to establish -or even to allege- any discriminatory or retaliatory conduct by those who made the decision to terminate him; and 2) Plaintiff's failure to rebut Defendant's legitimate reason for the termination.

### III. Analysis
#### A. Race Discrimination Charge

In opposing summary judgment, Plaintiff correctly describes his race discrimination claim as involving allegations of a "mixed motive," where both legitimate and illegitimate reasons motivated the decision. *See e.g., Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2148 (2003). The proof required to overcome summary

judgment in a mixed motive case is lower than in a case involving allegations of only a single (discriminatory) motive.

> [T]o survive a defendant's motion for summary judgment, a Title VII plaintiff asserting a mixed-motive claim need only produce evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) "race, color, religion, sex, or national origin was *a* motivating factor" for the defendant's adverse employment action. 42 U.S.C. § 2000e-2(m) (emphasis added)
>
> *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 400 (6th Cir. 2008) *cert. denied*, 129 S. Ct. 2380 (2009).

In this case, Defendant is entitled to summary judgment because Plaintiff has failed to establish that race played any part at all in Defendant's decision to terminate Plaintiff's employment. While Plaintiff is not required to prove that race was the sole motivation, there must be at least some genuine issue of material fact that race played some small part in the employment decision in order to proceed to trial. *See id*. at 401.

Plaintiff in this case has established that he is a member in a protected class (African-American) and that he suffered an adverse employment action (termination). (Doc. 3). However, he has made no attempt to establish any connection between his race and the adverse employment action. Although the familiar *McDonnell Douglas/Burdine* framework does not directly apply to mixed motive claims of discrimination, the Sixth Circuit has stated that the framework may be "useful" in presenting a claim. *Spees v. James Marine, Inc.*, 617 F.3d 380, 390 (6th Cir. 2010); *see also Graham v. Best Buy Stores, L.P.,* 298 Fed. Appx. 487 (6th Cir. Oct. 22, 2008)(considering *McDonnell Douglas* framework, but concluding that defendant entitled to summary judgment where plaintiff

could not meet low burden to show race played any role in termination). In a mixed motive case the plaintiff need only present sufficient evidence - either direct or indirect- from which a reasonable jury could find that his race was a motivating factor in his termination. *See Spees,* 617 F.3d at 392.

In this case, Plaintiff has offered nothing more than his unsupported opinion that race played a role in his termination. He has failed to offer either direct or circumstantial evidence to support any connection between his race and his termination. Notwithstanding a conclusory allegation in his Complaint, he has failed to establish that any similarly situated employees were treated differently. The Complaint alleges generally that other employees utilized sick leave while attending non-work related events, but Plaintiff has failed to provide any information concerning those individuals. For example, he has failed to provide their names, their race, their position, what activities they engaged in while utilizing sick leave, or when they engaged in such conduct. In deposition testimony Plaintiff admitted that he was unaware of any other employee in his supervisors' chain of command who used sick leave to attend court proceedings. (Doc. 39, Exh. 1 at 35).

In addition, Plaintiff failed to allege or offer any evidence that Mr. Seale, as the decision maker, harbored any racial animus. Plaintiff's conclusory allegations, unsupported by evidence, cannot establish a genuine issue of material fact. *See Wright v. Murray Guard, Inc.,* 455 F.3d 702, 713 (6th Cir. 2006). Because Plaintiff has not offered any evidence at all through which a jury could reasonably find that Defendant's decision to terminate his employment was based on his race, he cannot overcome Defendant's

motion for summary judgment.

In the mixed-motive case of *White v. Baxter Healthcare Corp*, the plaintiff had presented evidence that his supervisor made openly discriminatory comments, such as "nobody wants to be around a black man." Even then, the court required the plaintiff to present some evidence that the supervisor's "racial animus was a motivating factor" in the adverse employment action. The plaintiff in *White* presented that evidence by showing that the supervisor "applied the wrong standard" to evaluate the plaintiff's job performance. By contrast, where a plaintiff has presented no evidence at all that racial animus was a motivating factor, courts have not hesitated to grant summary judgment. *See Curry v. SBC Communications, Inc.,* 669 F. Supp.2d 805 (E.D. Mich. 2009); *Laney v. Ohio Dept. Of Youth Services*, ___ F. Supp.2d ___, 2010 WL 2465377 (S.D. Ohio June 10, 2010)(defendant entitled to summary judgment on mixed motive claim where plaintiff failed to oppose motion with anything other than her unsupported belief that race played a role); *Hicks v. Concorde Career College*, 695 F. Supp.2d 779, 795 (W.D. Tenn. 2010)(same).

Mixed motive cases do not require the elimination of legitimate reasons for termination and therefore the "pretext" analysis of the *McDonnell Douglas/Burdine* framework is not entirely applicable. Nevertheless, evidence presented by the employer that race did not play *any* factor in Plaintiff's termination can be considered. *White*, 533 F.3d at 401. Defendant has offered unrebutted evidence that a legitimate non-discriminatory reason was the sole reason for Plaintiff's termination: namely, that Plaintiff was terminated for improper use of sick leave to attend court proceedings in

violation of the Employee and Labor Relations Manual ("ELM") section 513.32 (Conditions for Authorization of Sick Leave).

In "single motive" discrimination cases a plaintiff can demonstrate pretext by showing that the given reason "did not exist in fact," or by establishing that the given reason "was not the true reason" or by showing that the given reason "was not sufficient for the action." *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). In a mixed motive case, a plaintiff may use similar evidence as one way in which to create an inference by which a reasonable jury could infer that race played some role in the adverse action.

Here, Plaintiff argues strenuously that the Defendant misapplied or misinterpreted the ELM policy in question. According to Plaintiff, the policy permitted his use of sick leave because he "simultaneously" became so stressed by his court proceedings that he could not perform his duties at work. Of course, as Defendant points out, Plaintiff would not have been "stressed" but for his use of sick leave to attend the non-work related court proceedings. Plaintiff additionally argues that Defendant "has not proven the Plaintiff was not sick when he took the described sick leave while simultaneously attending Court." (Doc. 44 at 12). Finally, Plaintiff argues that he should not have been terminated because he testified that "he did not know that using sick leave while he was sick and going to court was wrong" (Doc. 44 at 21), and that the Defendant should have considered his honest mistake.

The issue in this case is not whether the Defendant was correct in its

interpretation of the ELM policy, but rather, whether Defendant itself had an honest belief that Plaintiff's claim for sick leave was in violation of the policy and warranted termination. *See Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir 2001). This court's brief examination of the policy and other evidence offered by Defendant, including the full investigative report and two administrative hearings, support Defendant's belief that Plaintiff violated the policy. *See Sybrandt v. Home Depot, U.S.A., Inc.* 560 F.3d 553 (6th Cir. 2009)(employer's proffered reason for termination - violation of company policy - was not pretextual where employer engaged in thorough investigation to determine whether employee's conduct was inappropriate); *Curry v. SBC Communications, Inc.*, 669 F. Supp.2d 805 (E.D. Mich. 2009)(termination based on honestly held belief of employee misconduct after thorough investigation). Plaintiff implicitly accepts the same conclusion to the extent that he argues that he made an honest mistake in claiming sick leave, such that the penalty imposed was too harsh. In the absence of evidence that race played any role at all in the decision to terminate Plaintiff, this court will not second-guess the Defendant's facially reasonable application of its leave policy.

### B. Mixed Motive Claim Based on Gender

In his response to Defendant's motion for summary judgment, Plaintiff argues that his Complaint also should be construed as alleging discrimination based on his sex (Male), because he "inadvertently left out" that allegation from this lawsuit. I do not find cause for Plaintiff to amend his Complaint to include the omitted claim, because the Defendant would be entitled to judgment as a matter of law even if such a claim had been

included.  Plaintiff no more states a *prima facie* case of gender discrimination than he states a *prima face* case for race discrimination.

### C.  Retaliation Claim

Defendant likewise is entitled to summary judgment on Plaintiff's retaliation claim.  In order to establish a *prima facie* case of retaliation under Title VII, an employee must establish (1) that he engaged in an activity protected by Title VII; (2) that this exercise of his protected civil rights was known to defendant; (3) that defendant thereafter took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *See Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir.1987); *see also Morris v. Oldham County Fiscal Ct.,* 201 F.3d 784, 792 (6th Cir. 2000).

It remains unclear whether *White's* "mixed motive" analysis applies to retaliation claims in the Sixth Circuit.  *See e.g., Awad v. National City Bank*, 2010 WL 1524411 at n.4 (N.D. Ohio April 15, 2010).  However, Defendant is entitled to summary judgment on Plaintiff's retaliation claim even if Plaintiff is only required to show that a retaliatory motive played "a role" in his termination, because Plaintiff has failed to offer any evidence through which a reasonable jury could find that retaliation played a part in the adverse employment decision.

The burden of establishing a *prima facie* case in a retaliation action "is not onerous," but one "easily met." *Nguyen* 229 F.3d at 565 (*quoting EEOC v. Avery Dennison Corp.*, 104 F.3d 858 (6th Cir. 1997)).  The *McDonnell Douglas/Burdine*

burden-shifting framework is one way in which a plaintiff may establish a *prima facie* case of retaliation. *See McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1981); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S.Ct. 1089 (1981). Under that traditional framework, "[o]nce a *prima facie* case is established, the burden of producing some non-discriminatory reason falls upon the defendant." *Williams v. Nashville Network,* 132 F.3d 1123, 1131 (6th Cir. 1997); *see also Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987). "If the defendant demonstrates such, the plaintiff then assumes the burden of showing that the reasons given by the defendant were a pretext for retaliation." *Id*.

Plaintiff alleges that he was singled out for investigation and ultimately terminated based on his prior EEO activity. He alleges in his Complaint that between August 15, 2006 and September 2, 2006 he was subjected to harassment by supervisor Carmen Pitts and Tammy Eichelbreener. (Doc. 3 ¶ 26-30). On October 25, 2006, the plaintiff filed an EEOC complaint concerning these same allegations. Plaintiff's 2006 EEOC complaint alleged discrimination based on race (African-American), sex (Male), and retaliation (prior EEO activity). The EEOC issued a Final Agency Decision rejecting all of plaintiff's claims on April 11, 2007. Plaintiff did not appeal that decision to the EEOC Commission, or seek timely further review of those claims in federal court.

In his response to Defendant's motion for summary judgment, Plaintiff

> admits the allegations in the Complaint regarding Carmen Pitts and
> Tammy Eichelbreener were adjudicated and dismissed at the
> administrative level and are not presented in this Complaint for the
> purposes of advancing those individual alleged acts to prove race

12

> or sex discrimination.  Those particular acts were properly
> dismissed.  However, Plaintiff cites those acts for the limited
> purpose of showing a pattern and practice of discrimination for
> retaliatory purpose.

(Doc. 44 at 5).  Because Plaintiff's prior allegations of discrimination and retaliation were decided adversely to him and were not appealed, no discrimination or retaliation was ever proven.  Thus, he cannot use the same allegations in this proceeding to show "a pattern and practice of discrimination for retaliatory purpose." Plaintiff contends that he was nonetheless targeted for the OIG investigation based on his prior EEOC activity.  (Doc. 3 at ¶ 34).  To that extent alone (to demonstrate prior EEOC activity), the prior allegations are relevant to his retaliation claim in this proceeding.

In its motion for summary judgment, Defendant has produced evidence that refutes Plaintiff's conclusory allegations that retaliation played a role in the termination decision.  Unrebutted evidence demonstrates that the investigation was conducted by an agent with the Office of Inspector General ("OIG") named Richard Bowers.  Agent Bowers testified that he approached the management of the BMC in 2006 after he was assigned to that facility, and requested that management provide him with the files of all employees receiving workers' compensation or on limited duty. (Doc. 39, Exh. 3 at 204-206).  Based on the criteria and files received, Agent Bowers reviewed stacks of files before pulling Plaintiff's file as one of approximately 12 selected for investigation.   (Id. at 205-208).  Agent Bowers testified he was unaware of Plaintiff's EEO activity when he decided to investigate Plaintiff.  Not only does Plaintiff fail to offer any contrary evidence, but Plaintiff does not even allege that Agent Bowers was aware of his prior EEO activity.

Agent Bowers issued his Report on March 23, 2007, distributing the report to managerial employees including Patrick Kane, the Manager of the Bulk Mail Center. Plaintiff was served with a "Proposed Notice of Removal" by his immediate supervisor, Joyce Staples, just six days later. The Notice closely tracked the findings and allegations contained in Agent Bowers' Report. Ultimately, Plaintiff was terminated based on the findings made by OIG Agent Bowers.

At the administrative level, Plaintiff alleged that Defendant retaliated against him by placing documentation of his court appearances in his personnel file where the information would be discovered by Agent Bowers. (Doc. 3-1 at 2). Plaintiff alleges that Managers Richard Hohenstatt and Patrick Kane in particular "used the OIG investigation as a tool for retaliation for Plaintiff's subsequent retaliatory removal." (Doc. 3 at ¶ 34). Indeed, Agent Bowers testified that a public record reflecting Plaintiff's court appearances piqued his interest and provided grounds for further investigation of Plaintiff's file.

Nevertheless, the evidence presented by Defendant supports its position that - regardless of how the court records came to be in Plaintiff's file - the decision to investigate Plaintiff was initiated by Agent Bowers alone. Plaintiff offers nothing to refute Agent Bowers' testimony on that point, or to support his allegation that he was "targeted" for investigation by Managers Hohenstatt and Kane in retaliation for his prior EEOC conduct.

To the extent that Plaintiff alleges that either Hohenstatt, Kane or some other

14

person placed court records in his file prior to its review by Agent Bowers, Defendant first argues that Plaintiff's failure to plead that allegation at the administrative level forecloses any such claim in this proceeding. Defendant notes there is no evidence that Plaintiff contacted the EEOC within 45 days after someone allegedly placed the public record in his file. *See generally Brown v. General Services Administration*, 426 U.S. 820 (1976).

Somewhat contradicting Defendant's position, the EEOC decision attached to Plaintiff's Complaint, Doc. 3-1, reflects that the allegation concerning the court records was considered during the second hearing before the administrative judge. Doc. 3-2 at 2. The administrative judge "noted that he does not claim jurisdiction over the OIG investigation, but concluded that [Plaintiff] failed to prove his affirmative defense [of retaliation] for that matter." The EEOC Commission affirmed in its January 15, 2009 decision.

Regardless of whether the allegation was timely presented before the EEOC, Plaintiff's allegation concerning the placement of court records in his personnel file fails to demonstrate retaliation. Plaintiff does not allege who placed the documents in his file, when they did so, or why that action was improper. The maintenance of sick leave records is a legitimate management function. In addition, Mr. Bowers independently determined who to investigate, and Jerry Seale, who was above Joyce Staples in the chain of command, was the sole and final decision maker with regard to Plaintiff's termination. Mr. Seale testified that he first became aware of the misuse of sick leave through the OIG report. (Doc. 39, Exh. 3 at 108). Mr. Seale further testified that Plaintiff's lack of

remorse for his misuse of sick leave was an important factor contributing to his decision to terminate Plaintiff. (Doc. 39, Exh. 2 at 161, Exh. 3 at 103). Mr. Seale expressly denied that race or retaliation played any role in the decision. (*Id*., Exh. 3 at 138, 158; Exh. 2 at 182). As with Agent Bowers, Plaintiff has failed to allege that Mr. Seale was even aware of Plaintiff's prior EEO activity prior to deciding to terminate his employment.

In short, Plaintiff has failed to allege - much less establish - that anyone actually connected with his termination had prior knowledge of his EEOC activities. Absent some evidence that relevant employees or agents of the Defendant were aware of the protected activity, Plaintiff cannot establish a *prima facie* case of retaliation because he has failed to show (even under *White*) that a retaliatory motive played any role in the decision to terminate him.

Finally, Plaintiff has failed to refute Defendant's legitimate non-retaliatory reason for termination. Plaintiff has admitted that he used sick leave to attend court proceedings. (Doc. 3 at ¶ 22). The Complaint and memorandum in opposition to Defendant's motion are devoid of any allegations that refute Defendant's non-retaliatory reason for termination. To the extent that burden-shifting remains relevant for a mixed motive retaliation claim, Plaintiff has failed to demonstrate that Defendant's stated reason for his termination was a mere pretext for retaliation.

### D. Motion for Nunc Pro Tunc/ Additional Memoranda

After obtaining a thirty-day extension of time in which to file his original

response to Defendant's motion for summary judgment, Plaintiff filed not only a responsive memorandum on July 15, 2010 but two additional documents: an "addendum" and a "motion for nunc pro tunc." Neither of the additional documents should be considered by the court. Even if considered, they do not alter the recommendation of the undersigned that summary judgment should be granted to the Defendant.

On July 16, 2010, Plaintiff filed an "addendum" in support of his original response (Doc. 45), which states (without citation) that Supervisor Joyce Staples "admitted under oath she saw the Plaintiff hurting on several occasions." The same "addendum" suggests that an attached document "with different signature dates" proves retaliatory intent by his employer to terminate him. The "attached" document to which Plaintiff refers is what appears to be a second page of some type of form presumably used by BMC - and appears to recommend Plaintiff's termination. The form purports to bear the signature of Joyce Staples dated 3/29/07 and of a reviewing supervisor, Renetta Jordan, dated 12/1/08. The court can only speculate that the unauthenticated page is part of the Proposed Notice of Removal originally given to Plaintiff on March 29, 2007. Its addition into the record simply has no impact on the court's analysis.

More than a month after filing the referenced "addendum" to his memorandum in opposition, on August 23, 2010, Plaintiff filed a motion for "nunc pro tunc." (Doc. 47). In this motion, Plaintiff argues that he was "unable to state all of his reasons against summary judgment" in his original memorandum in opposition, but does not explain why he could not include the newly tendered "evidence." Attached to Plaintiff's motion as an exhibit is an unauthenticated copy of the Ohio Office of Unemployment Compensation's

Determination of Unemployment Compensation Benefits, bearing a decision date of 5/23/07. The decision reflects that Plaintiff was awarded unemployment compensation for a one-year period beginning on 4/22/07, notwithstanding his "disciplinary layoff...on 3/29/07" based on the Office of Unemployment's determination that the "disciplinary layoff has been determined to be non-disqualifying" because "[f]acts available do not establish misconduct in connection with the work."

This court declines to consider Plaintiff's supplemental memoranda and exhibits, and will recommend denial of Plaintiff's motion for nunc pro tunc for several reasons. Ordinarily, a party opposing summary judgment is allowed to file only one memorandum in opposition. LR 7.2(a)(2). In keeping with the usual "one responsive memorandum" rule, plaintiff fails to explain why his supplemental exhibits could not have been tendered with his original response. Second, the purported unemployment decision does not appear to have been offered by Plaintiff during his administrative proceedings, or at any other point in time during discovery concerning the Title VII claims at issue in this case. The decision substantially predates both hearings before the MSPB and the EEOC's investigation and the administrative findings made by those bodies. On the record presented, the newly offered evidence should not be considered by this court. To the extent it is considered by the presiding district judge, I would alternatively conclude that it is irrelevant because there is no record as to the basis for the finding made by the Office of Unemployment, and subsequent investigations, hearings, and findings by other administrative agencies as well as the evidence before this court soundly refute the cursory earlier finding.

### IV. Conclusion and Recommendation

Accordingly, **IT IS RECOMMENDED THAT:** (1) Defendant's motion for summary judgment (Doc. 39) be **GRANTED**; (2) Plaintiff's motion for nunc pro tunc (Doc. 47) be **DENIED**; and that (3) This case be dismissed with prejudice from the active docket.

In addition, **IT IS RECOMMENDED THAT** the court certify pursuant to 28 U.S.C. §1915(a) that for the foregoing reasons an appeal of this Order would not be taken in good faith and therefore deny plaintiff leave to appeal *in forma pauperis*. Plaintiff remains free to apply to proceed *in forma pauperis* in the Court of Appeals. *See Callihan v. Schneider*, 178 F.3d 800, 803 (6th Cir. 1999), overruling in part *Floyd v. United States Postal Serv.*, 105 F.3d 274, 277 (6th Cir. 1997).

This 15th day of November, 2010.

/s J. Gregory Wehrman
J. Gregory Wehrman
United States Magistrate Judge

**United States District Court**
**Southern District of Ohio**
**Western Division**

| | | |
|---|---|---|
| **STEPHEN ERKINS,** | : | Case No. 1:09CV059 |
| | : | |
| **Plaintiff,** | : | D.J. Dlott |
| | : | M.J. Wehrman |
| **v.** | : | |
| | : | |
| **JOHN E. POTTER, POSTMASTER** | : | |
| **GENERAL, U.S. POSTAL SERVICE,** | : | |
| | : | |
| **Defendant.** | : | |

**NOTICE**

    Attached hereto is the Report and Recommendation Decision of the Honorable J. Gregory Wehrman, United States Magistrate Judge.  Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations **within 14 days** after being served with this Report and Recommendation.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  A party may respond to another party's objections **within 14 days** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).